QUESTIONS:
1. When the State Board of Administration deposits securities with a bank or a trust company for `safekeeping,' for the collection of principal and interest or of the proceeds thereof, must the board receive some type of written receipt which sets forth the particulars of the `safekeeping' agreement and, if so, what type of information is required thereon?
2. Is the board prohibited from acquiring ownership of direct obligations of the United States Government when such are not serialized or otherwise individually identified but are rather issued by means of a book entry of record at the federal reserve bank of issue and at another banking institution from which the purchase in question was made?
SUMMARY:
The State Board of Administration is not required by law to obtain or receive written trust receipts setting forth the particulars of a `safekeeping agreement' relating to securities it deposits with a financial institution in safekeeping for the collection of principal and interest, or of the proceeds of sale thereof. The board is not inhibited by law from purchasing United States treasury bills or any other form of direct or guaranteed obligations of the United States issued, recorded, and accounted for by means of a new, so-called book-entry system, even though such obligations are not individually issued and serialized.
Both of your questions are answered in the negative.
AS TO QUESTION 1:
Your question appears to arise out of the following fact situation. The Board of Administration, pursuant to authority granted it by s. 215.44(1), F. S., has undertaken to purchase securities as part of an investment program involving a repurchase agreement by which the original seller of securities agrees with the board to buy back the securities at the termination date set forth in the agreement. Under the plan, the board never actually receives physical custody of the securities; rather, they are retained either by the original seller or by a third party financial institution during the entire period the board owns them. Your specific inquiry concerns how the board is required to maintain accountability for the securities it purchases. You note that, under a similar provision, s. 125.31, F. S., granting investment authority to the boards of county commissioners, physical custody of securities is required unless the board receives bank trust receipts for all securities held in lieu of such actual custody. The question has arisen whether the Board of Administration is likewise required to obtain or receive written trust receipts, in the interest of accountability, for any securities it owns which are held in safekeeping for it by a financial institution.
At the outset, it should be noted that s. 125.31, F. S., by its terms, applies solely to investments by the boards of county commissioners. Investments by the Board of Administration and the duties relative thereto are covered by a separate staute. Section215.44, F. S., as noted, authorizes the board to invest `all the trust funds and all agency funds of each state agency, as defined in s. 216.011, to the fullest extent that is consistent with the cash requirements and investment objectives of the particular trust fund or agency fund.' Along with this authority, the statute imposes numerous responsibilities upon the board relative to its investment powers. Section 215.50(1), F. S., states that all securities purchased or held by the board may, with board approval, be held in custody of the State Treasurer or `be deposited with a bank or trust company to be held in safekeeping
by such bank or trust company for the collection of principal and interest, or of the proceeds of the sale thereof.' (Emphasis supplied.) This last quoted section of the statute provides the sole alternative to actual physical custody of the securities by the board or the State Treasurer. It does not, by its terms, require that the board obtain or receive trust receipts setting forth the particulars of a `safekeeping agreement' governing securities held for the board by an authorized financial institution, although presumably some adequate record of the transaction would be kept by the board in its possession and among its records. Neither, in my opinion, can a requirement for a `safekeeping agreement' be inferred from the language `held in safekeeping.' The word `safekeeping' is defined as the `act of keeping or preserving in safety, from injury, loss, or escape; care, custody, protection.' Webster's Second International Dictionary. Clearly, then, s. 215.50(1) requires the bank or trust company to hold safely in protective custody the securities deposited with it by the board for the statutorily designated purposes as well as the principal and interest therefrom but does not imply a requirement that the board receive a written safekeeping agreement.
I would, however, note that a `safekeeping agreement' or other record of a given transaction should be in the possession of the board and a part of its records and investment accounts; indeed, such data should be the basis for, and necessary in, the accounting procedures and the reports to interested state officials and agencies prescribed by the statute. See s. 215.51, F. S. The statute imposes upon the board the duty `to see that moneys invested under the provisions of ss. 215.44-215.53 are at all times handled in the best interests of the state.' Section215.44(2), F. S. Further, the board is required to pay all income from investments as collected into investment accounts of the fund or funds to which the investments belong and to keep for each fund for which investments are made separate accounts and records of the individual amounts and the totals of all investments belonging to each such fund or funds. Additionally, every receipt and collection or disbursement when received or made must be reported to the board for recording to the particular fund to which it belongs, and written monthly reports detailing any changes in investments made during the preceding month for their respective fund or funds must be made to each and every interested official or agency. See ss. 215.50(2) and 215.51, F. S., and cf., s.215.49(3), F. S. In light of such fiduciary duties, it would appear incumbent upon the board to utilize the best standard procedure possible for maintaining adequate and strict accountability for the securities it purchases. I conclude, however, that the board is not required by Ch. 215, F. S., to obtain written trust receipts detailing the particulars of a `safekeeping agreement' with an authorized financial institution relating to securities deposited with it by the board to be held in safekeeping by such financial institution for the collection of principal and interest or of the proceeds of the sale thereof.
AS TO QUESTION 2:
In view of my answer to question 1, I find no reason that the board should be precluded from purchasing and owning direct obligations of the United States or obligations guaranteed by it or for which its credit is pledged, including treasury bills [it is specifically authorized to purchase these obligations `without limitation' by virtue of s. 215.47(1)(a)], solely because any of such securities may not be serialized or individually issued. The book-entry system is claimed by the Federal Reserve Bank to be a `modern, efficient, safe, and expeditious method of dealing in securities . . . [which] . . . protects the investor against loss, theft, and counterfeiting . . . .' Circular Letter 544-76, Federal Reserve Bank of Atlanta, November 11, 1946.
Hence, the new method is not in conflict with any statutory requirement and also furthers the aim of maintaining accountability and protection or safety of securities deposited in the bank for safekeeping. I therefore conclude that there is no obstacle imposed by Ch. 215, F. S., to the board's purchase of treasury bills, or any other form of direct or guaranteed obligations of the United States, issued, recorded, and accounted for by means of the new so-called book-entry system, even though such obligations are not individually issued and serialized.
Prepared by: Sharyn L. Smith Assistant Attorney General Frank A. Vickory Legal Research Assistant